1

2

3

4                          UNITED STATES DISTRICT COURT

5                                DISTRICT OF NEVADA

6                                      * * *

7    CHARLIE M. CABRERA,                          Case No. 2:12-cv-00918-RFB-CWH

8                 Plaintiff,
                                                              **ORDER**
9           v.
                                                  Plaintiff's   Motions   for   Summary   Judgment
10   CLARK COUNTY DETENTION CENTER,               (ECF Nos. 72, 120)
     *et al.*,
11
                                                  Defendants' Motions for Summary Judgment
12                Defendants.                     (ECF Nos. 80, 118)

13

14         **I.      INTRODUCTION**

15               This case is before the Court on several motions for summary judgment. Plaintiff Charlie

16   Cabrera asserts a claim for excessive force against Defendant Jessie Neville, a corrections officer

17   employed by the Las Vegas Metropolitan Police Department. Cabrera's excessive force claim

18   arises out of an incident that took place at Clark County Detention Center (CCDC) in which Officer

19   Neville forcefully restrained Cabrera against a wall, allegedly injuring Cabrera's shoulders, back,

20   and hip. Cabrera also asserts a deliberate indifference claim against Defendant NaphCare, Inc., the

21   contracted health care provider at CCDC. Cabrera alleges that NaphCare denied him medical

22   treatment for his injuries without having a doctor examine him. For the reasons given below, the

23   Court grants summary judgment in favor of Defendants on all of Cabrera's claims.

24

25         **II.     BACKGROUND**

26                **A. Procedural History**

27               Cabrera initially filed his civil rights complaint on May 31, 2012, in which he alleged

28   several causes of action pursuant to 42 U.S.C. § 1983 against Defendants CCDC, Officer Neville,

1    and various Doe defendants. ECF No. 1. The Complaint was subsequently screened by the Court,

2    and Cabrera filed an Amended Complaint on February 9, 2013. ECF Nos. 5, 10.

3          After various orders from the Court addressing the legal sufficiency of the Amended

4    Complaint, the counts remaining in Cabrera's Amended Complaint are as follows: (1) Fourteenth

5    Amendment excessive force claim against Neville; (2) Eighth Amendment excessive force claim

6    against Neville; and (3) Eighth Amendment deliberate indifference to medical needs claim against

7    NaphCare.

8          There are now four separate Motions for Summary Judgment pending before the Court.

9    Cabrera has filed two Motions for Summary Judgment, the first against both Defendants on

10   September 24, 2014 and the second against NaphCare on March 23, 2015. ECF Nos. 72, 120.

11   Neville filed an Amended Motion for Summary Judgment, pursuant to the Court's instructions, on

12   October 7, 2014. ECF No. 80. NaphCare filed a Motion for Summary Judgment on March 6, 2015.

13   ECF No. 118.

14         The Court held oral argument on the motions for summary judgment on January 14, 2016.

15   At the hearing, for the reasons stated on the record, the Court ruled that it would consider Cabrera's

16   motions for summary judgment and response briefs despite the fact that Cabrera had filed several

17   of these documents past the applicable deadlines. On March 30, 2016, the Court denied both of

18   Cabrera's motions, granted Neville's motion in part and denied it in part, and granted NaphCare's

19   motion. Minute Order, ECF No. 159. The Court stated that it would issue a written order. This

20   Order sets forth the Court's reasoning for its rulings. In addition, the Court finds good cause to

21   reconsider its ruling and grant Neville's motion for summary judgment in its entirety.[1] Thus,

22   summary judgment is granted in Defendants' favor on all counts.

23   . . .

24   . . .

25

26   _____

27        [1] See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper, 254 F.3d 882, 885 (9th Cir.
     2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural
28   power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient.")
     (internal quotation marks omitted).

**B. Facts**

After reviewing the evidence submitted by the parties, the Court finds the following undisputed facts.

*1. Background*

Cabrera was adjudicated guilty of two charges in Nevada state court on August 17, 2011 and was sentenced on the same day. The judgment of conviction for this adjudication and sentence was entered on September 14, 2011. From the date he was sentenced on August 17, 2011 until September 20, 2011, Cabrera was incarcerated in Clark County Detention Center (CCDC).[2] On September 20, 2011, he was removed from CCDC and transferred into the custody of the Nevada Department of Corrections (NDOC).

*2. Incident with Officer Neville*

On September 5, 2011, Cabrera was housed in Module 4P at CCDC. Officer Neville was also assigned to Module 4P on that day. On September 5, 2011, Neville instructed the 4P inmates to sit at a group of tables while he delivered a lecture on the need for them to follow CCDC behavioral rules. Neville was the only officer present in the room and there were at least forty inmates seated at the tables. While Neville was addressing the inmates, Cabrera interrupted him and either asked or told Neville to stop treating the inmates like children. Cabrera said this loud enough for Neville and the other inmates to clearly hear him. Neville then left the front of the room and walked through the middle of the group of tables. Initially, he walked past Cabrera; however, Cabrera then raised his hand and indicated that he was the one who had made the comment or question.

Neville then began to approach Cabrera. As Neville approached, Cabrera stood up from his chair and partially turned around so that when Neville did approach, he was facing Cabrera's right side. Cabrera did not turn to completely face Neville, nor did he attempt to make contact with Neville. The timing and the manner with which Cabrera stood to partially face Neville could reasonably be viewed as physically provocative. When Neville reached Cabrera, he grabbed

---

[2] Cabrera may have been detained in CCDC earlier than August 17, 2011; however, that fact is irrelevant to the claims asserted in this case.

1   Cabrera by his shirt collar and forcefully took him to the wall approximately four to five feet away.

2   Neville was walking at a normal pace as he approached Cabrera, and continued to walk at that

3   same pace as he took Cabrera to the wall. Neville kept his hands on Cabrera as he brought Cabrera

4   to the wall. Neville did not push or shove Cabrera. Neville then held Cabrera against the wall for

5   approximately thirty seconds, after which he released Cabrera. Cabrera then walked back to the

6   table where he had been sitting and picked up his chair. Cabrera and Neville continued to speak

7   face-to-face for about twenty more seconds, at which point Cabrera sat down with no apparent

8   difficulty or discomfort or any other indication of pain or injury. Neville continued to stand over

9   him and speak to him for another forty seconds. Neville then walked back to the front of the room,

10  and Cabrera sat through the remainder of the meeting.

11  ### 3.  *Medical Attention Given by NaphCare*

12  At all times relevant to this case during which Cabrera was detained at CCDC, NaphCare

13  was the contracted provider of medical services at CCDC. Cabrera did not report any injuries from

14  the incident between September 5, 2011 (the date the alleged incident occurred) and September 8,

15  2011. On September 8, 2011, Cabrera submitted a grievance to the Las Vegas Metropolitan Police

16  Department ("Metro") complaining of lower back and shoulder pain from the September 5

17  incident. Cabrera was seen on the same day by Nurse Deramos, who was employed by NaphCare.

18  The nurse noted the following: "No brusing [sic], redness, swelling noted. Skin is intact. No

19  breakdown. Late entry."

20  On September 17, 2011, Cabrera submitted a medical kite stating that his lower back and

21  shoulder pain was continuing. This kite was referred to the sick call doctor and was responded to

22  the next day, on September 18, 2011. The responding staffperson instructed Cabrera to purchase

23  Tylenol and Motrin from the commissary.

24  On September 19, 2011, Cabrera submitted another medical kite stating that he was still

25  experiencing pain and that this was the third time he had requested to be seen by a doctor. The

26  September 19 kite was also referred to the sick call doctor and responded to the next day, on

27  September 20, 2011. However, the response contains only the letters "NIC," indicating that

28

1    Cabrera was no longer in custody at CCDC.[3]

2                              **4.  Disputed Facts**

3            The remainder of the material facts to this incident are disputed.[4]

4            In his affidavit, Neville states that Cabrera's initial comment in front of the whole group

5    was to tell Neville to "stop treating us like kids" in a sarcastic and challenging tone. Neville

6    immediately became concerned that this comment would encourage the other inmates to be

7    insubordinate and that he would lose control of the group. Neville asserts that after he walked to

8    the back of the room, Cabrera loudly announced "I fucking said it" and quickly stood up. Neville

9    then quickly approached Cabrera, grabbed his shirt collar, and secured him against the wall.

10   Neville states that while Cabrera was against the wall, Neville did not hit, kick, or do anything to

11   Cabrera other than hold him against the wall and control his movement. Cabrera then calmed

12   down, at which point Neville released him and walked him back to the table. Neville later

13   explained that Cabrera could have been written up for discipline, and Cabrera apologized.

14           Cabrera's affidavit presents a different version of events. Cabrera states that while Neville

15   was addressing the group, Cabrera asked "why are you treating us like children?" Neville then

16   immediately moved into the group of inmates and started screaming at the inmate behind Cabrera.

17   Cabrera then asked Neville why he was yelling at that inmate when the inmate hadn't said

18   anything, and told Neville that he had asked the question. Next, Cabrera avers that Neville grabbed

19   him and slammed him against the concrete wall, which contained a ledge. Cabrera states that

20   Neville held his arm against Cabrera's neck and held his body against Cabrera, pinning Cabrera to

21   the wall. After Cabrera returned to his seat, Neville loudly told the group of inmates that that is

22   what happens when someone challenges his authority. In their private conversation after the group

23   meeting, Cabrera states that Neville told him that Neville could have done worse and that if

24   Cabrera filed a report, he would be sorry.

25

26   ─────────────────

27           [3] As stated above, Cabrera was transferred to the custody of NDOC on September 20, 2011.

28           [4] The parties only dispute facts that are material to the excessive force claims against Officer
     Neville, not the deliberate indifference claim against NaphCare.

### III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

Where the party seeking summary judgment does not have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its [initial] burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id. If it fails to carry this initial burden, "the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." Id. at 1102-03. If the movant has carried its initial burden, "the nonmoving party must produce evidence to support its claim or defense." Id. at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). However, the ultimate burden of persuasion on a motion for summary judgment rests with the moving party, who must convince the court that no genuine issue of material fact exists. Nissan Fire, 210 F.3d at 1102.

### IV.    DISCUSSION

Based upon its review of the parties' briefs and the evidence in the record, the Court concludes

1    that summary judgment must be granted in favor of Defendants on all claims.

2

3                    **A. Count I – Fourteenth Amendment Excessive Force Claim**

4            In Count I, Cabrera asserts a claim for excessive force against Officer Neville under the

5    Fourteenth Amendment. The Court finds that Cabrera was a convicted prisoner at the time of the

6    incident with Officer Neville, and therefore the Eighth Amendment, not the Fourteenth, applies to

7    his excessive force claim. Consequently, summary judgment is granted in favor of Defendants on

8    Count I.

9                             *1. Applicable Law*

10           Excessive force claims brought under 42 U.S.C. § 1983 are not "governed by a single

11   generic standard." Graham v. Connor, 490 U.S. 386, 393 (1989). Instead, courts are to begin "by

12   identifying the specific constitutional right allegedly infringed by the challenged application of

13   force," and then must refer to "the specific constitutional standard which governs that right." Id.

14   at 394.

15           The Eighth Amendment is the "primary source of substantive protection to convicted

16   prisoners" in excessive force cases. Whitley v. Albers, 475 U.S. 312, 327 (1986). However,

17   "Eighth Amendment scrutiny is appropriate only after the State has complied with the

18   constitutional guarantees traditionally associated with criminal prosecutions . . . [T]he State does

19   not acquire the power to punish with which the Eighth Amendment is concerned until after it has

20   secured a formal adjudication of guilt in accordance with due process of law." City of Revere v.

21   Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) (quoting Ingraham v. Wright, 439 U.S. 651, 671-72,

22   n.40 (1977)). Although the term "formal adjudication" has not been specifically defined, the

23   Supreme Court in Graham made clear that this refers to "conviction and sentence." Graham, 490

24   U.S. at 393 n.6 (confirming, in light of Ingraham, the appellate court's view that "the Eighth

25   Amendment's protections [do] not attach until after conviction and sentence.").

26           Where, by contrast, an individual has not been convicted but is detained pending trial,

27   constitutional protection against excessive force is provided by the Due Process Clause of the

28   Fourteenth Amendment. See Graham, 490 U.S. at 395 n.10. Under the Fourteenth Amendment

1    framework, "detainees have a right against jail conditions or restrictions that amount to

2    punishment. This standard differs significantly from the standard relevant to convicted prisoners"

3    under the Eighth Amendment. Pierce v. Cnty. of Orange, 526 F.3d 1190, 1205 (9th Cir. 2008)

4    (citation and internal quotation marks omitted).

5               ***2. The Fourteenth Amendment Does Not Apply to Cabrera's Excessive Force***

6                       ***Claim***

7        Here, Cabrera was convicted and sentenced on August 17, 2011—before the incident at

8    CCDC with Officer Neville. The Court therefore finds that there was a formal adjudication of guilt

9    prior to the incident that gave rise to Cabrera's excessive force claim. The excessive force standard

10    under the Fourteenth Amendment is inapplicable to convicted and imprisoned persons, "who may

11    be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel

12    and unusual punishment." Id. Therefore, the proper framework for analyzing Cabrera's claim is

13    provided by the Eighth Amendment, not the Fourteenth.

14        The record shows that the judgment of conviction was not entered until after the incident

15    with Neville. However, the Court finds that under the circumstances of this case it is the dates of

16    conviction and sentence themselves, rather than the date of entry of the judgment of conviction,

17    that matter for purposes of determining whether there has been a formal adjudication of guilt. This

18    finding is consistent with Ninth Circuit precedent stating that the application of the Eighth versus

19    Fourteenth Amendment depends on whether an individual has been "convicted." See Gibson v.

20    Cnty. of Washoe, 290 F.3d 1175, 1187 (9th Cir. 2002) ("Because [the plaintiff] had not been

21    convicted of a crime, but had only been arrested, his rights derive from the due process clause

22    rather than the Eighth Amendment[ ]"); Jones v. Blanas, 393 F.3d 918, 931 (9th Cir. 2004) ("[T]he

23    more protective fourteenth amendment standard applies to conditions of confinement when

24    detainees . . . have not been convicted of a crime.") (alterations in original) (internal quotation

25    marks omitted). By the time of the alleged incident with Officer Neville, Cabrera had already

26    entered a plea of guilty to his criminal charges, had been adjudged guilty, and had been sentenced.

27    In this case, the "formal adjudication of guilt" occurred when Cabrera appeared in court and was

28    found guilty and sentenced. The entry of judgment of conviction was not needed in order to trigger

1    the protections of the Eighth Amendment.

2          Therefore, because the Fourteenth Amendment is not applicable to Cabrera's excessive

3    force claim, summary judgment is granted in favor of Neville on Count I.

4

5          **B.  Count II – Eighth Amendment Excessive Force Claim**

6          Count II is an excessive force claim against Officer Neville brought under the Eighth

7    Amendment. In their motions, Cabrera and Neville each argue that summary judgment should be

8    granted in their favor on this claim. The Court finds that the force used by Neville against Cabrera

9    did not violate the Eighth Amendment, and therefore grants summary judgment in Neville's favor.

10   Moreover, even if the Court were to find an Eighth Amendment violation, Neville would be

11   entitled to qualified immunity on this claim.

12                  *1.  Applicable Law*

13         The Eighth Amendment forbids cruel and unusual punishment. In an excessive force case,

14   prison officials violate the Eighth Amendment if they cause "the unnecessary and wanton infliction

15   of pain." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citations and quotation marks omitted);

16   Furnace v. Sullivan, 705 F.3d 1021, 1027 (9th Cir. 2013). The "core judicial inquiry" in an

17   excessive force case is "whether force was applied in a good-faith effort to maintain or restore

18   discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 6. Courts consider

19   five factors in making this determination: (1) the extent of the injury suffered by the inmate; (2)

20   the need for the use of force; (3) the relationship between the need and the level of force used; (4)

21   the threat reasonably perceived by the responsible officials; and (5) any efforts made to mitigate

22   the severity of the force used. Furnace, 705 F.3d at 1028-29 (citation and quotation marks omitted).

23                  *2.  Neville's Actions Did Not Violate the Eighth Amendment*

24         After reviewing the record, the Court finds no evidence from which a reasonable factfinder

25   could conclude that the force used by Neville was unconstitutionally excessive. Although Cabrera

26   claims that he was slammed against the wall and pinned there with Neville's forearm against his

27   neck, this assertion is contradicted by the video evidence, Cabrera's conduct after the incident, and

28   Cabrera's reported injuries. Therefore, summary judgment must be granted in Neville's favor.

1        The evidence supports summary judgment for two reasons. First, the video evidence[5] and

2   Cabrera's claims of back pain fail to corroborate Cabrera's allegation that Neville slammed him

3   against the wall. The video does not show Neville slamming, pushing, or throwing Cabrera against

4   the wall. Instead, it shows Neville grabbing Cabrera by his shirt collar and taking him to the nearby

5   wall. While Neville unquestionably used force as he took Cabrera to the wall and held him there,

6   he kept his hands on Cabrera the entire time and did not push or throw him against the wall. Neville

7   was walking at a normal gait as he approached Cabrera, and continued to walk at that same pace

8   as he brought Cabrera to the wall. Cabrera was not visible on the video while he was restrained

9   against the wall; however, Neville was partially visible, and he stood upright the entire time

10  Cabrera remained there (approximately thirty seconds). This evidence supports Neville's assertion

11  in his affidavit that he was only attempting to "secure" Cabrera against the wall. Further, the video

12  shows that after being released, Cabrera was able to return to his table, pick up his chair, and sit

13  normally for the remainder of the video clip (approximately three minutes) with no visible

14  difficulty or signs of pain or discomfort. The Court finds that in light of this video evidence, no

15  reasonable factfinder could find—as Cabrera states in his affidavit—that Neville slammed him

16  against the wall and pinned him there with his forearm against Cabrera's neck. See Scott v. Harris,

17  550 U.S. 372, 381 (2007) ("When opposing parties tell two different stories, one of which is

18  blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

19  adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

20  Moreover, although Cabrera did complain of back pain, his complaints came three days after the

21  incident with Neville. He was examined the same day that he submitted his complaint and was

22  found to have no bruising, swelling, or redness. While the Court does not discount the fact that

23  Cabrera may have suffered pain from the incident, these facts—combined with the video evidence

24  showing that Cabrera was not slammed, thrown, or pushed against the wall—demonstrate that

25  Neville exercised a low degree of force that did not cause significant injury to Cabrera.

26        Second, the Court considers the context in which the interaction took place. Here, Neville

27

28        [5] The video of the incident was included as Exhibit E to Neville's Motion for Summary Judgment, ECF No. 80.

1    was the only officer addressing a group of at least forty inmates. Like any corrections officer in

2    that position, Neville was necessarily concerned with and responsible for maintaining discipline.

3    Maintaining order became even more of a concern after Cabrera interrupted Neville and stood to

4    face him. These facts are corroborated by the video evidence, which shows Neville walking to the

5    back of the room, followed by Cabrera raising his hand, standing up, and turning to partially face

6    Neville as Neville approached him. These actions could reasonably be perceived—and, according

7    to Neville, were in fact perceived—as a physical challenge to Neville's authority and, if left

8    unchecked, a threat to his safety and the safety of other inmates. Therefore, there was a need for

9    Neville to take certain actions to maintain or restore discipline. Moreover, the evidence shows that

10   the force used by Neville was proportionate to the need for that force. As discussed above, Neville

11   grabbed Cabrera and restrained him against the wall, but did not slam him. Neville also did not

12   push Cabrera beyond what was necessary to take him to the wall.

13           Therefore, the Court concludes based upon the undisputed evidence that Neville used

14   reasonable force in a good-faith effort to maintain discipline. Although Cabrera disputes the level

15   of force used against him, the Court finds this to be insufficient to create a genuine issue of material

16   fact. Viewing the record as a whole—including the video evidence, Neville's affidavit, and Mr.

17   Cabrera's behavior and requests after the incident—no reasonable jury could find that Neville used

18   force maliciously or sadistically to cause harm. Therefore, summary judgment is granted in favor

19   of Neville on Count II.

20                       ***3.  Neville Is Entitled to Qualified Immunity***

21           Even if the Court did not grant summary judgment based upon the undisputed evidence,

22   Neville would be entitled to qualified immunity on Cabrera's Eighth Amendment claim.

23           "Qualified immunity protects government officials from civil damages 'insofar as their

24   conduct does not violate clearly established statutory or constitutional rights of which a reasonable

25   person would have known.'" Chappell v. Mandeville, 706 F.3d 1052, 1056 (9th Cir. 2013)

26   (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The qualified immunity inquiry has two

27   prongs: "(1) whether, taken in the light most favorable to the party asserting the injury, the facts

28   alleged show the official's conduct violated a constitutional right; and (2) if so, whether the right

1    was clearly established in light of the specific case." Robinson v. York, 566 F.3d 817, 821 (9th

2    Cir. 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). Under the second prong, courts

3    "consider whether a reasonable officer would have had fair notice that the action was unlawful."

4    Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted).

5    While a case directly on point is not required in order for a right to be clearly established, "existing

6    precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v.

7    al-Kidd, 131 S.Ct. 2074, 2083 (2011).

8            In deciding a claim of qualified immunity where a genuine issue of material fact exists, the

9    court accepts the version asserted by the non-moving party. Ellins v. City of Sierra Madre, 710

10   F.3d 1049, 1064 (9th Cir. 2013); Coles v. Eagle, 704 F.3d 624, 629 (9th Cir. 2012). Summary

11   judgment must be denied where a genuine issue of material fact exists that prevents a finding of

12   qualified immunity. Sandoval v. Las Vegas Metropolitan Police Dept., 756 F.3d 1154, 1160 (9th

13   Cir. 2014).

14           In this case, even if Neville had used excessive force (thereby enabling Cabrera to satisfy

15   the first prong), Neville would be entitled to qualified immunity. It was not clearly established at

16   the time of the incident that a convicted inmate had the right to be free from forceful restraint

17   against a wall after physically confronting an officer. It is certainly true that Cabrera had a right to

18   be free from excessive force, specifically under the Eighth Amendment as an inmate, and that "the

19   unnecessary and wanton infliction of pain" violates the Eighth Amendment. Martinez v. Stanford,

20   323 F.3d 1178, 1183-84 (9th Cir. 2003). In the prison context, however, the Ninth Circuit has

21   recognized that officers "must balance the need to maintain or restore discipline through force

22   against the risk of injury to inmates." Hudson, 503 U.S. at 6 (internal quotation marks omitted).

23   Here, Neville forcefully restrained Cabrera against the wall only *after* Cabrera disrupted Neville's

24   speech (in a room where Neville was the only figure of authority) and *after* Cabrera physically

25   confronted Neville by standing up and turning to face him as he approached. Given Cabrera's

26   disruptive behavior, no reasonable officer would have been on fair notice that it was unlawful to

27   forcefully restrain him against a wall.

28   . . .

1    Even if Cabrera had been slammed more forcefully against the wall as he claims, the Court

2    would still find that qualified immunity applied. This is because the degree of force alleged, given

3    the medical evidence indicating a lack of significant injury or bruising, would still not rise to the

4    level where it would be excessive pursuant to established Eighth Amendment jurisprudence.

5    Hudson, 503 U.S. at 6. Such force, under the circumstances in which it was used, would not be

6    clearly excessive given the deference courts give to prison officials, who "must balance the need

7    to maintain or restore discipline through force against the risk of injury to inmates." Id. (internal

8    quotation marks omitted). Consequently, Neville would be entitled to qualified immunity on Count

9    II even if the Court were to find that his actions constituted excessive force.

10

11    **C.  Count III – Eighth Amendment Deliberate Indifference Claim**

12    In Count III, Cabrera alleges that NaphCare was deliberately indifferent to his medical

13    needs after the incident with Officer Neville. Based upon its review of the record, the Court

14    concludes that summary judgment must be granted in NaphCare's favor on Count III.

15    *1.  Applicable Law*

16    To establish an Eighth Amendment claim against prison officials for medical treatment, an

17    incarcerated plaintiff must show deliberate indifference to his serious medical needs. Peralta v.

18    Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

19    The Ninth Circuit has established a two-part test for deliberate indifference. First, the

20    plaintiff must establish a serious medical need, meaning that "failure to treat [the condition] could

21    result in further significant injury or the unnecessary and wanton infliction of pain." Jett v. Penner,

22    439 F.3d 1091, 1096 (9th Cir. 2006) (citations and internal quotation marks omitted).

23    Second, the plaintiff must demonstrate the defendant's deliberate indifference to the need.

24    Id. This prong "is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's

25    pain or possible medical need and (b) harm caused by the indifference," although the harm need

26    not necessarily be substantial. Id. Mere negligence or inadvertence is not sufficient to state a claim

27    for deliberate indifference. Id.

28    *2.  Summary Judgment Is Granted In Favor of NaphCare*

- 13 -

1    Here, even assuming that Cabrera has established a serious medical need, he has not

2    produced any evidence from which a reasonable factfinder could conclude that NaphCare was

3    deliberately indifferent to that need.

4    First, Cabrera has not shown that any policy, custom, or practice by NaphCare violated his

5    Eighth Amendment rights. Cabrera's claim against NaphCare is a municipal liability claim under

6    42 U.S.C. § 1983. A municipality (or an entity acting on behalf of a municipality) cannot be held

7    liable under Section 1983 for the acts of its employees under a *respondeat superior* theory. Monell

8    v. Dept. of Social Servs., 436 U.S. 658, 691 (1978); see also West v. Atkins, 487 U.S. 42, 54

9    (1988) (a private physician contracted by a state to provide medical services to state prison inmates

10   "act[s] under color of state law for purposes of § 1983 when undertaking his duties in treating [the

11   plaintiff's] injury. Such conduct is fairly attributable to the State."). There are three principal

12   theories of municipal liability under Section 1983. First, a municipality can be held liable "when

13   implementation of its official policies or established customs inflicts the constitutional injury."

14   Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1249 (9th Cir. 2010) (quoting Monell, 436 U.S.

15   at 708). Second, a municipality can be held liable for "acts of omission," such as a failure to train,

16   provided that the failure "reflects a deliberate or conscious choice by a municipality." Clouthier,

17   591 F.3d at 1249-50 (internal quotation marks omitted). Third, a municipality can be held liable if

18   the individual who committed the unconstitutional act "was an official with final policy-making

19   authority," or if that official knew of a subordinate's action (and the basis for that action) and

20   deliberately ratified it. Id. at 1250.

21   Here, Cabrera has provided no evidence that NaphCare had an official policy or custom

22   that caused him injury, nor has he shown that NaphCare failed to train its employees in a manner

23   reflecting a deliberate choice or that a NaphCare staff member with final policymaking authority

24   refused him care or ratified a subordinate's decision to refuse him care. Cabrera points to the fact

25   that NaphCare has a policy requiring an examination within 24 hours of all inmates who undergo

26   a use of force, and argues that this was not done in his case. However, the failed implementation

27   of a policy is not enough to establish liability on behalf of the entity that established the policy.

28   See Clouthier, 591 F.3d at 1251 (the deficient implementation of a county's written policy by its

1   custodial and mental health staff is not enough to create a triable issue of fact as to whether the

2   county itself is liable for that deficiency). Therefore, Cabrera cannot survive summary judgment

3   on his <u>Monell</u> claim against NaphCare.

4         Second, even assuming that Cabrera is attempting to assert his claim against unnamed

5   NaphCare staff members, he has not produced any evidence that these staff members were

6   deliberately indifferent to his medical needs. The undisputed facts show that each time NaphCare

7   received a grievance from Cabrera, a NaphCare staff member responded in a way intended to

8   address his needs. When Cabrera submitted a grievance on September 8, 2011 regarding back and

9   shoulder pain, he was examined by a nurse that same day. The nurse found no external signs of

10   injury. The record shows that NaphCare did not receive another grievance from Cabrera until

11   September 17, 2011, and that they responded the next day directing him to purchase medication

12   from the commissary. Even if this could be construed as a violation of NaphCare's policy (which

13   states that inmates with non-urgent sick call requests must be "seen" the next business day), this

14   is at best evidence of negligence, which is not enough to establish a deliberate indifference claim.

15   See <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or

16   treating a medical condition, without more, does not violate a prisoner's Eighth Amendment

17   rights") (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992)). Similarly, NaphCare

18   staff responded within one day of Cabrera's final grievance, which was made on September 19,

19   2011, but Cabrera had already been transferred out of CCDC.

20         While Cabrera may disagree with the treatment decisions of the NaphCare staff, this is not

21   enough to establish deliberate indifference. See <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir.

22   1996) (a plaintiff's difference of opinion as to the proper course of treatment is insufficient, as a

23   matter of law, to establish deliberate indifference; to prevail, a plaintiff must show "that the course

24   of treatment the doctors chose was medically unacceptable under the circumstances" and that the

25   doctor or medical provider "chose this course in conscious disregard of an excessive risk to

26   plaintiff's health."). Even drawing all reasonable inferences from the undisputed facts in Cabrera's

27   favor, no reasonable jury could find that NaphCare or its staff were deliberately indifferent to

28   Cabrera's medical needs in this case. Therefore, summary judgment is granted in favor of

- 15 -

1    NaphCare on Count III.

2

3    **V.    CONCLUSION**

4         For the reasons discussed above,

5         **IT IS ORDERED** that Plaintiff Charlie M. Cabrera's Motion for Summary Judgment

6    (ECF No. 72) is DENIED.

7         **IT IS FURTHER ORDERED** that Defendant Jessie Neville's Amended Motion for

8    Summary Judgment (ECF No. 80) is GRANTED.

9         **IT IS FURTHER ORDERED** that Defendant NaphCare, Inc.'s Motion for Summary

10   Judgment (ECF No. 118) is GRANTED.

11        **IT IS FURTHER ORDERED** that Plaintiff Charlie M. Cabrera's Motion for Summary

12   Judgment (ECF No. 120) is DENIED.

13        The Clerk of Court is instructed to enter judgment in favor of Defendants and close this

14   case.

15

16        DATED: April 12, 2016.

17                                                    _____
                                                      **RICHARD F. BOULWARE, II**
18                                                    **United States District Judge**

19

20

21

22

23

24

25

26

27

28